UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PETER ALVIN KEATON,

        Petitioner,

                                Case No. 13-cv-10783

v.                                  Honorable Gerald E. Rosen

BONITA HOFFNER,

        Respondent.

_____/


## OPINION AND ORDER
## DENYING THE HABEAS CORPUS PETITION,
## DENYING PETITIONER'S MOTION TO CHANGE THE RESPONDENT,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
## GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Michigan prisoner Peter Alvin Keaton ("Petitioner") has filed a *pro se*
petition for the writ of habeas corpus under 28 U.S.C. § 2254.  The habeas petition
challenges Petitioner's state conviction for possessing a motor vehicle or
equipment that he knew or had reason to know would be used to operate or
maintain a methamphetamine laboratory.  Petitioner raises issues regarding the
sufficiency of the evidence, the use of testimony about a video that he made, and
two police officers' dual roles as lay and expert witnesses.  Respondent Bonita
Hoffner urges the Court through counsel to deny the petition on grounds that
Petitioner procedurally defaulted his third claim and that all his claims lack merit.

The Court agrees that Petitioner's claims do not warrant habeas relief.

Accordingly, the habeas petition will be denied.

## I.  Background

Petitioner was tried before a jury in Kalamazoo County Circuit Court where the only witnesses were police officers Darien Smith and Brett Hake.  Officer Smith testified that he came into contact with Petitioner on February 21, 2010, when he stopped a vehicle that Petitioner was driving because the front-seat passenger was not wearing a seat belt and because there was a full-length crack in the windshield.  Petitioner was the registered owner and driver of the vehicle.

During the traffic stop, Officer Smith smelled a strong odor consistent with chemicals used in making methamphetamine.  After Petitioner gave Smith permission to search the vehicle, Smith found pepper spray, a business-card case with four small baggies in it, an open package of rolling papers, a pipe, and keys to a General Motors product, all under the passenger's seat.  The pipe had white residue consistent with methamphetamine use.

Officer Smith then asked Petitioner how to open the trunk of his vehicle. Petitioner initially responded that he had not received keys with the car and that he did not know how to get into the trunk.  He subsequently pointed out the keyhole, and Officer Smith was able to unlock the trunk of the vehicle with the keys that he

found underneath the front passenger seat.  Inside the trunk, Officer Smith found a container of household lye, a container of liquid drain opener, an empty glass bottle, a container of camp fuel, a box of fertilizer spikes, and a personal hygiene kit containing a glass jar with coffee filters inside it.  Officer Smith testified that, in his opinion, these items were used in the production of methamphetamine and that only three additional ingredients (pseudoephedrine, which is found in Sudafed pills, lithium battery strips, salt, and a little water) were needed to make methamphetamine, using the "one-pot" method.

Petitioner acknowledged during his interaction with Officer Smith that the items in the trunk were related to the manufacture of methamphetamine, but he offered various reasons for possessing the items.  Although he did not have a reason for why there were coffee filters in his hygiene kit, he said that the fuel was for lanterns at his cousin's house, that the lye and liquid drain cleaner were for opening drains at his sister's place, and that the fertilizer spikes were for the trees and shrubs at his cousin's house.  Petitioner pointed out that he did not have everything that was needed to make a laboratory, and he admitted that he had made a training video for law enforcement officers on how to make methamphetamine using the one-pot method.

Police Officer Brett Hake corroborated much of Officer Smith's testimony.

3

He testified that he assisted Officer Smith during the traffic stop by helping Smith

search the trunk of Petitioner's vehicle.  Hake opined that the items in the trunk

were "[t]he makings of a one-pot meth lab," minus Sudafed and lithium strips.  On

cross-examination, Officer Hake admitted that all of the items were general

household items that anybody would use.  But, on redirect examination, Officer

Smith stated that, based on his experience in law enforcement, there was no reason

for all the items to be together in a moving vehicle unless they were meant to make

methamphetamine.

Petitioner did not testify or present any witnesses.  His defense was that the

prosecution failed to prove intent to produce a methamphetamine laboratory and

that the prosecution's whole case was built on mere speculation.

On May 4, 2010, the jury found Petitioner guilty of possessing items that he

knew or had reason to know would be used to manufacture methamphetamine.

*See* Mich. Comp. Laws § 333.7401c(1).  The trial court sentenced Petitioner as a

habitual offender, fourth offense, to imprisonment for thirteen to thirty years.  The

Michigan Court of Appeals affirmed Petitioner's conviction, *see People v. Keaton*,

No. 299175, 2011 WL 4839113 (Mich. Ct. App. Oct. 11, 2011), and on March 26,

2012, the Michigan Supreme Court denied leave to appeal because it was not

persuaded to review the issues.  *See People v. Keaton*, 491 Mich. 887; 810 N.W.2d

4

28 (2012) (table).

On February 19, 2013, Petitioner signed and dated his habeas petition, and on February 26, 2013, the Court filed the petition.  More recently, Petitioner moved to substitute the name of his current warden (DeWayne Burton) for that of respondent Bonita Hoffner, his former warden.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law

5

> or if the state court decides a case differently than [the Supreme]
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause [of § 2254(d)(1)], a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly,

> [w]hen reviewing state criminal convictions on collateral review,
> federal judges are required to afford state courts due respect by
> overturning their decisions only when there could be no reasonable
> dispute that they were wrong.  Federal habeas review thus exists as "a

6

> guard against extreme malfunctions in the state criminal justice
> systems, not a substitute for ordinary error correction through appeal."
> *Harrington*, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation
> marks omitted).

*Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (*per curiam*).  To obtain a writ of

habeas corpus from a federal court, a state prisoner must show that the state court's

ruling on his claims "was so lacking in justification that there was an error . . . .

beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at

103.

## III.  Analysis

### A.  Sufficiency of the Evidence

Petitioner alleges that the State failed to prove beyond a reasonable doubt

that he was guilty of the charged offense.  Petitioner claims that the items found in

his car did not comprise a methamphetamine laboratory and that there was no proof

he intended to acquire additional items in order to manufacture methamphetamine.

The Michigan Court of Appeals adjudicated this claim on the merits and concluded

that the State proved the essential elements of the crime beyond a reasonable

doubt.

### 1.  Clearly Established Federal Law

The critical inquiry on review of challenges to the sufficiency of the

evidence supporting a criminal conviction is

7

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citations and footnote omitted) (emphasis in original). The prosecution is not required "to rule out every hypothesis except that of guilt beyond a reasonable doubt," and a federal habeas corpus court must defer to the factfinder's resolution of facts supporting conflicting inferences. *Id.* at 326.

Furthermore, "[c]ircumstantial evidence alone is sufficient to sustain a conviction," *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). In fact, the Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). "Circumstantial evidence . . . is intrinsically no different from testimonial evidence." *Holland v. United States*, 348 U.S. 121, 140 (1954).

8

## 2. Application

Petitioner was charged with violating Mich. Comp. Laws § 333.7401c(1), which reads in relevant part:

> (1) A person shall not do any of the following:
>
>> (a) Own, possess, or use a vehicle, building, structure, place, or area that he or she knows or has reason to know is to be used as a location to manufacture a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.
>>
>> (b) Own or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

Mich. Comp. Laws § 333.7401c(1)(a) and (b) (footnotes omitted).  The trial court described the charge as "possessing chemical or laboratory equipment and/or a motor vehicle that he knew or had reason to know was to be used or was intended to be used for the purpose of manufacturing methamphetamine." (Trial Tr., 150, May 4, 2010.)   The trial court defined the elements of this offense as follows:

> First, that the defendant owned or possessed any chemical or laboratory equipment and/or motor vehicle.
>
> Second, that the defendant knew or had reason to know that the chemical and/or laboratory equipment and/or motor vehicle he owned or possessed was to be used or intended to be used for the purpose of

9

manufacturing methamphetamine.

(*Id*. at 151.)  The testimony in this case established that,

> [Petitioner] owned the vehicle that he was driving.  In addition, the
> vehicle contained several items which were known to be used in the
> manufacture of methamphetamine.  Officer Darien Smith of the
> Kalamazoo Township police department, who performed the traffic
> stop on [Petitioner's] vehicle, testified that lye, liquid drain cleaner,
> Coleman camp fuel, fertilizer spikes, glass bottles and coffee filters,
> all of which were found in [Petitioner's] vehicle, are used in
> manufacturing methamphetamine.  Moreover, Officer Brett Hake,
> who was also with the Kalamazoo Township police department and
> who was with Officer Smith when the traffic stop was performed,
> testified that the items found in [Petitioner's] trunk comprised the
> makings of a one-pot methamphetamine laboratory.

*Keaton*, 2011 WL 4839113, at *1.  A rational trier of fact could have concluded

from this evidence that the prosecution proved the elements of the charged offense.


Petitioner nevertheless contends that the items he possessed did not

comprise all the items needed for a methamphetamine laboratory.  But the

Michigan Court of Appeals noted that the statute does not require the defendant to

possess all the components used in the manufacture of methamphetamine before he

can be convicted of operating or maintaining a laboratory involving

methamphetamine.

Furthermore, both of the officers who testified against Petitioner opined that

only a few additional items were needed to manufacture methamphetamine in a

10

container and that, in their opinion, the items in Petitioner's trunk were intended for that purpose.  They did not find Petitioner's reasons for possessing the items to be sincere or plausible, and Officer Hake testified that there was no other reason for Petitioner to be traveling with the items unless he intended to use them for manufacturing methamphetamine.  The jury was entitled to infer from all the evidence that Petitioner possessed the items in his trunk for the purpose of manufacturing methamphetamine, and this Court must defer to the jury's resolution of the facts.  *Jackson*, 443 U.S. at 319, 326.

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner owned or possessed equipment or a motor vehicle that he knew or had reason to know would be used to manufacture methamphetamine.  Therefore, the evidence adduced at trial was sufficient to support Petitioner's conviction, and the state court's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, *Jackson.* Petitioner has no right to relief on the basis of his sufficiency-of-the-evidence claim.

**B.  The Evidentiary Claim**

Petitioner alleges next that he was denied due process and a fair trial by Officer Smith's testimony that Petitioner admitted to him during their encounter on

11

February 21, 2010, that he (Petitioner) had made a video showing law enforcement officers how to make methamphetamine using the one-pot method.   (Trial Tr., 114-15, May 4, 2010.)[1]  Petitioner claims that this evidence was unfairly prejudicial and that it led the jury to convict him because there was no proof that he intended to violate the statute.  The Michigan Court of Appeals, however, determined that the trial court did not abuse its discretion when it allowed Officer Smith's statement about the video to be admitted in evidence.

Generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012), *cert. denied*, 134 S. Ct. 110 (2013).  And even though a federal court may grant relief when the state court's evidentiary ruling was so fundamentally unfair as to rise to the level of a due-process violation, *id.*, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Dowling v. United States*, 493 U.S. 342, 352 (1990).

The Michigan Court of Appeals determined that the disputed evidence was admissible and relevant.  As the Court of Appeals recognized, Petitioner's

---

[1]  Officer Smith also testified that he had previous knowledge of Petitioner making the video and showing officers how to manufacture methamphetamine using the one-pot method. (*Id.* at 127.)  And the prosecutor stated in his closing argument that Petitioner knew what the items in his truck were and "how to make and manufacture methamphetamine because he was the one who made a video for the local drug enforcement team on this particular one-pot method . . . ."  (Trial Tr., 142, May 4, 2010.)

knowledge of the procedure for making methamphetamine tended to show that his possession of most of the ingredients for making methamphetamine was not coincidental and that he probably possessed the items for the purpose of operating or maintaining a laboratory involving methamphetamine.

Furthermore, there was sufficient evidence to convict Petitioner as charged even without the testimony that he had made a video demonstrating how to make methamphetamine. He possessed most of the components of a methamphetamine laboratory in his car at the time of the traffic stop. He also informed the officers that some items needed for a methamphetamine laboratory, including muriatic acid, were missing. And he pointed out that nothing in the trunk was mixed, broken, or formed. The jury could have inferred from these comments to the officers that Petitioner knew how to make methamphetamine and that he had made it in the past. Consequently, Officer Smith's testimony – that Petitioner had made a video for law enforcement officers on how to make amphetamine using the one-pot method – was not fundamentally unfair. Petitioner has no right to relief on the basis of his evidentiary claim.

## C. The Police Officers' Testimony and Lack of a Jury Instruction

In his third and final claim, Petitioner alleges that he was deprived of due process and a fair trial because there was no demarcation between the police

13

officers' fact and expert testimony.  Additionally, Petitioner claims that the trial court failed to adequately instruct the jury on the officers' dual roles as fact and expert witnesses.  Petitioner asserts that witnesses are forbidden from expressing an opinion on the defendant's guilt or innocence and that the police officers' testimony – that there was no reason for Petitioner to possess the items in his vehicle other than to manufacture methamphetamine – was clearly inappropriate.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because he did not preserve the issue for appellate review by objecting at trial.  The Court of Appeals ultimately concluded that the trial court correctly admitted the police officers' lay opinion testimony, that there was no need for a cautionary jury instruction, and that "[d]efense counsel was not ineffective for failing to request a cautionary instruction regarding the officer's testimony because such a request by defense counsel would have been futile."  *Keaton*, 2011 WL 4839113, at *3.

### 1.  Procedural Default

Respondent contends that Petitioner's claim is procedurally defaulted.  A procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Under the doctrine of procedural default, "a federal court will not review the merits of  claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

14

procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).  An exception to this rule applies when the prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

> In this Circuit

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met:  (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default."  [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)].  To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

### 2.  Application of the Factors

In Michigan, defendants in criminal cases are required to preserve their claims for appeal by first making an objection in the trial court.  *People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-39 (Mich. 1999).  Petitioner violated this rule by not objecting to the officers' testimony as being expert testimony and by consenting to the jury instructions as given.  Thus, the first element of

procedural default is satisfied.

The second element of procedural default is enforcement of a state procedural rule. The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting defendant's substantial rights" because Petitioner did not preserve his claim for appellate review. *Keaton*, 2011 WL 4839113, at *2. A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)). The fact that the Court of Appeals also addressed the merits of Petitioner's claim "does not require [this Court] to disregard the state court's finding of procedural bar." *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v.*] *Sykes* [433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id*. at 264 n.10 (emphasis in original).

16

The third element of procedural default requires determining whether the state procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim.  "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

"[T]he procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts," *Morgan v. Lafler*, 452 F. App'x 637, 647 (6th Cir. 2011) (citing *Carines*, 597 N.W.2d at 138-39), and the Michigan Court of Appeals actually relied on the rule to foreclose relief in this case.  Therefore, the state appellate court's ruling was an adequate and independent state ground for denying review of Petitioner's claim.

To summarize, Petitioner violated a relevant state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the rule was an adequate and independent state ground for precluding review of Petitioner's claim.  Therefore, federal habeas review of Petitioner's third claim is barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[]

17

will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### 3.  Cause and Prejudice; Miscarriage of Justice

Petitioner alleges that his trial attorney's failure to object at trial was "cause"

for his procedural default.  "Ineffective assistance of counsel can constitute cause

for a procedural default." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013)

(citing *Murray v. Carrier*,  477 U.S.  478, 492 (1986)), *cert. denied sub nom*

*Hodges v. Carpenter*, 135 S. Ct. 1545 (2015).  But "[t]o establish ineffective

assistance of trial counsel, [Petitioner] must show that (1) his counsel's

performance was deficient; and (2) the deficient performance prejudiced the

defense." *Id.* at 534 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88

(1984)).

The Michigan Court of Appeals determined that the police officers'

testimony was properly admitted.  The Court of Appeals explained that

> [t]he testimony of Officers Smith and Hake was based on their
> personal knowledge, training, and experience as police officers
> relating to methamphetamine laboratories and their components.
> Officers Smith and Hake's opinions that the components found in
> defendant's vehicle were consistent with a methamphetamine
> laboratory were rationally based on their perceptions as police officers
> who deal with methamphetamine laboratories and components as part
> of their job.  MRE 701.  Although Officers Smith and Hake's
> testimony included some scientific, technical or other specialized
> knowledge, their testimony "was not overly dependent upon scientific,
> technical or other specialized knowledge."  Further, the officers'
> testimony was helpful for a clear understanding about why finding

18

those items in a vehicle should result in a conclusion that a methamphetamine laboratory was being maintained or operated. MRE 701.

*Keaton*, 2011 WL 4839113, at *3 (internal case citations omitted).

The state court's interpretation of state law binds this Court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). And because the Michigan Court of Appeals determined that the officers' testimony was admissible, defense counsel was not ineffective for failing to object to the testimony or for failing to request a jury instruction on a witness's dual roles as a lay and expert witness. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.), *cert. denied*, 134 S. Ct. 513 (2013).

Petitioner has failed to established "cause" for his procedural default. As a result, the Court need not determine whether Petitioner has established resulting prejudice. *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir. 2010). The remaining question is whether Petitioner can "demonstrate that the failure to consider [his claim] will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d

19

754, 764 (6th Cir. 2006) (citing *Murray*, 477 U.S. at 496).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, . . . any reasonable juror would have reasonable doubt."  *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not produced any new evidence of actual innocence, and the evidence against him was substantial.  Therefore, a miscarriage of justice will not result from the Court's failure to address Petitioner's third claim on the merits.

## IV.  Conclusion

Petitioner's third claim is procedurally defaulted, and the state appellate court's adjudication of Petitioner's other claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts.  The state court's decision certainly was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.  Accordingly, the petition for writ of habeas corpus (Dkt. #1) is denied, and Petitioner's motion to change the

20

name of the respondent (Dkt. #13) is denied as unnecessary.

## V. Certificate of Appealability and Appellate Filing Fee

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.

Accordingly, **IT IS ORDERED THAT** a certificate of appealability is **DENIED**. Nevertheless, because an appeal from this decision could be taken in good faith,

**IT IS FURTHER ORDERED THAT** Petitioner may proceed *in forma pauperis* on appeal if he decides to file an appeal because an appeal could be taken

in good faith.  28 U.S.C. § 1915(a)(3).


                                s/Gerald E. Rosen
                                Chief Judge, United States District Court

Dated:  June 30, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2015, by electronic and/or ordinary mail.

                                s/Julie Owens
                                Case Manager, (313) 234-5135